**Fill in this information to identify the case:**

Debtor 1: Dennis A. Samsel

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Pennsylvania
(State)

Case number: 18-10005-PMM

# Official Form 410S1

## Notice of Mortgage Payment Change    12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank National Association

**Court claim no.** (if known): 3-1

**Last four digits** of any number you use to identify the debtor's account: 4459

**Date of payment change:** 12/01/2020
Must be at least 21 days after date of this notice

**New total payment:** $331.16
Principal, interest, and escrow, if any

### Part 1: Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**
   - ☐ No
   - ☒ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $394.19     New escrow payment: $115.91

### Part 2: Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**
   - ☐ No
   - ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: 4.8750%     New interest rate: 4.8750%

   Current principal and interest payment: $522.46     New principal and interest payment: $215.25

### Part 3: Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**
   - ☒ No
   - ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect.)*

   Reason for change: _____

   Current mortgage payment: $_____     New mortgage payment: $_____

| Debtor 1 | Dennis A. Samsel | Case Number *(if known)* | 18-10005-PMM |
|---|---|---|---|
| | First Name   Middle Name   Last Name | | |

### Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

- ☐ I am the creditor.
- ☒ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

**x** /s/ Matthew Tillma          Date  06/09/2021
Signature

Print:   Matthew Tillma          Title  Authorized Agent for U.S. Bank National Association
         First Name   Middle Name   Last Name

Company:   Bonial & Associates, P.C.

Address:   14841 Dallas Parkway, Suite 425
           Number     Street
           Dallas, Texas  75254
           City    State    Zip Code

Contact phone   (972) 643-6600          Email   POCInquiries@BonialPC.com

**CERTIFICATE OF SERVICE OF NOTICE OF MORTGAGE PAYMENT CHANGE**

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on or before June 9, 2021 via electronic notice unless otherwise stated.

**Debtor**  *Via U.S. Mail*
Dennis A. Samsel
308 Snyder Road
Oley, PA 19547

**Debtors' Attorney**
George M. Lutz
Attorney At Law
Hartman, Valeriano, Magovern, Lutz, PC
1025 B, Suite 700 P.O. Box 5828
Wyomissing, PA  19610

**Chapter 13 Trustee**
Scott Waterman
2901 Saint Lawrence Ave., Suite 100
Reading, Pennsylvania 19606

                                       Respectfully Submitted,

                                       /s/  Matthew Tillma

# U.S. Bank
## Home Mortgage

U.S. Bank Home Mortgage
P.O. Box 21948
Eagan, MN 55121

DENNIS A SAMSEL
GRACE Y SAMSEL
308 SNYDER RD
OLEY PA 19547-8919

### Contact Information

Live Customer Support: 800-365-7772
Mon-Fri 7 a.m. – 8 p.m. CT and Sat 8 a.m. – 2 p.m. CT
Automated Services also available at this number 24 hours

Live Hearing Impaired Customer Support: 800-874-5563
Monday-Friday, 8 a.m. – 5 p.m. CT
A TDD/TTY machine is required when calling this number

| | Correspondence Address | Notice of Error and Request for Information |
|---|---|---|
| | U.S. Bank Home Mortgage<br>P.O. Box 21948<br>Eagan, MN 55121 | U.S. Bank Home Mortgage<br>P.O. Box 21977<br>Eagan, MN 55121 |

Website: www.usbankhomemortgage.com

### Payment Information

ACCOUNT NUMBER: 
ANALYSIS DATE: 09/22/20

| | PRESENT PAYMENT | NEW PAYMENT As of 12/01/20 |
|---|---|---|
| Principal & Interest (P&I) | 522.46 | 522.46 |
| Escrow Deposit | 394.19 | 381.32 |
| Shortage Spread | 0.00 | 8.21 |
| Total | 916.65 | 911.99 |

Representation of Printed Document
## Annual Escrow Account Disclosure Statement

Property Address: 308 SNYDER ROAD
OLEY PA 19547

### Coming Year Escrow Projections

The Coming Year Escrow Projection is a month by month estimate of activity in your escrow account over the next 12 months. Your current escrow balance and all anticipated payments and disbursements are included to determine the Projected Escrow Account Balance. When your escrow balance reaches its lowest point during an account cycle, that balance is targeted to be your cushion amount or low point. The Required Escrow Account Balance is the amount to be on deposit as allowed by Federal law, State law, and/or your mortgage documents; and may include a cushion of up to 1/6th of your Anticipated Annual Disbursements. Your projected low balance is 145.07 and the lowest required balance should not exceed 762.64. The amount is indicated below with an arrow (<). This results in a shortage of 98.48. Please retain this statement for comparison with the actual activity in your account.

| ANTICIPATED ANNUAL DISBURSEMENTS | |
|---|---|
| CITY TAX | 1,390.94 |
| TAXES | 3,184.95 |
| TOTAL DISBURSEMENTS | 4,575.89 |
| 1/12th Total Annual Disbursements Monthly Deposit | 381.32 |

### ACCOUNT PROJECTIONS

| MONTH | ANTICIPATED AMOUNT TO ESCROW | ANTICIPATED AMOUNT FROM ESCROW | DESCRIPTION | PROJECTED ESCROW ACCOUNT BALANCE | REQUIRED ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|
| | | | Beginning Balance | 1,289.08 | 1,906.65 | |
| 12/20 | 381.32 | | | 1,670.40 | 2,287.97 | |
| 01/21 | 381.32 | | | 2,051.72 | 2,669.29 | |
| 02/21 | 381.32 | | | 2,433.04 | 3,050.61 | |
| 03/21 | 381.32 | | | 2,814.36 | 3,431.93 | |
| 04/21 | 381.32 | 1,390.94- | CITY TAX | 1,804.74 | 2,422.31 | |
| 05/21 | 381.32 | | | 2,186.06 | 2,803.63 | |
| 06/21 | 381.32 | | | 2,567.38 | 3,184.95 | |
| 07/21 | 381.32 | | | 2,948.70 | 3,566.27 | |
| 08/21 | 381.32 | 3,184.95- | SCHOOL TAX | 145.07 | 762.64 | < |
| 09/21 | 381.32 | | | 526.39 | 1,143.96 | |
| 10/21 | 381.32 | | | 907.71 | 1,525.28 | |
| 11/21 | 381.32 | | | 1,289.03 | 1,906.60 | |
| TOTAL | 4,575.84 | 4,575.89- | | | | |

### PROJECTED ESCROW BALANCE SUMMARY

AS OF 09/22/20
| | |
|---|---|
| PROJECTED LOW BAL | 145.07 |
| PLUS ESCROW ADJUSTMENT | 519.09 |
| LESS REQUIRED LOW BAL | 762.64 |
| SHORTAGE | 98.48 |
| ESCROW SHORTAGE PRORATED FOR 12 MONTHS | 8.21 |

An escrow adjustment of $519.09, scheduled to be repaid through the bankruptcy, is included in this calculation.

EQUAL HOUSING LENDER    MEMBER FDIC    SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

**NOTICE: This correspondence is sent only for informational purposes and/or for the purpose of compliance with the loan documents and/or applicable law. You may be afforded certain protections under the United States Bankruptcy Code. By this correspondence, U.S. Bank is not attempting to collect a debt, impose personal liability, or in any way violate the provisions of the United States Bankruptcy Code. For any questions related to the bankruptcy, please contact your bankruptcy attorney.**

Effective August 1, 2020, U.S. Bank mortgage servicing has resumed standard hours of operation. See the Contact Information section above for details.

### Notices of Error and Requests for Information

Borrowers have certain rights under Federal law related to resolving errors and requesting information about their mortgage account. Notices of Error and Requests For Information must be directed to U.S. Bank, Attention: Consumer Advocacy, P.O. Box 21977, Eagan, MN 55121. Your submission must be in writing and include the name of each borrower, the loan number and a description of the error you believe has occurred OR a request for specific information regarding your mortgage loan.

---

## U.S. Bank Home Mortgage

### ESCROW SHORTAGE COUPON
(THIS IS NOT A BILL.)

DENNIS A SAMSEL
GRACE Y SAMSEL

Internet Reprint

Please make your check payable to:

U.S. BANK HOME MORTGAGE
PO BOX 790415
ST LOUIS MO 63179-0415

LOAN NUMBER 
**Shortage Amount: $98.48**

Please Note: The total escrow shortage has been divided over the next 12 months. The new monthly escrow deposit reflects any adjustments in your tax and/or insurance disbursements. This has resulted in your monthly mortgage payment being adjusted to 911.99 effective 12/01/20.

If you elect to pay the entire shortage amount, your new monthly payment will be $903.78, effective 12/01/20, based on the Anticipated Annual Disbursements.

| Escrow Shortage Amount Enclosed | |
|---|---|

Please write your loan number on your check and return this coupon with your payment.

Check Processing Notice: By sending your personal check to U.S. Bank Home Mortgage, you are authorizing conversion of your check to a one-time ACH debit from your account. If converted, only the amount of the check will be debited with no additional charges. Your paper check will be destroyed and as a result you will not receive your check back. Please call Customer Service if you would like to learn about other payment options.

- This statement itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure. The projections from your previous escrow analysis are to the left of the actual payments, disbursements and escrow balance. By comparing the actual escrow payments to the previous projections listed, you can determine where a difference may have occurred.
- An asterisk (*) indicates a difference from the projected activity in either the amount or date.
- When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.
- Your projected low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| • Monthly payment(s) received earlier OR later than expected | • Tax rate and/or assessed value changed | • Premium changed |
| • Monthly payment(s) received were less than OR greater than expected | • Exemption status lost or changed | • Coverage changed |
| • Previous overage was returned to escrow | • Supplemental/Delinquent tax paid | • Additional premium paid |
| • Previous shortage not paid entirely | • Tax bill paid earlier OR later than expected | • Insurance bill paid earlier OR later than expected |
|  | • Tax installment not paid | • Premium was not paid |
|  | • Tax refund received | • Premium refund received |
|  | • New tax escrow requirement paid | • New insurance escrow requirement paid |
|  |  | • Lender placed insurance premium paid |

| MONTH | PAYMENTS TO ESCROW PROJECTED | PAYMENTS TO ESCROW ACTUAL | DISBURSEMENTS FROM ESCROW PROJECTED | DISBURSEMENTS FROM ESCROW ACTUAL | DESCRIPTION | ESCROW BALANCE PROJECTED | ESCROW BALANCE ACTUAL |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | BEGINNING BALANCE | 1,877.68 | 385.43 |
| 12/19 | 375.53 | 374.63 * |  |  |  | 2,253.21 | 760.06 |
| 01/20 | 375.53 | 374.63 * |  |  |  | 2,628.74 | 1,134.69 |
| 02/20 | 375.53 | 394.19 * |  |  |  | 3,004.27 | 1,528.88 |
| 03/20 | 375.53 | 788.38 * |  |  |  | 3,379.80 | 2,317.26 |
| 04/20 | 375.53 | * | 1,390.94 | 1,390.94 | CITY TAX | 2,364.39 | 926.32 |
| 05/20 | 375.53 | * |  |  |  | 2,739.92 | 926.32 |
| 06/20 | 375.53 | 394.19 * |  |  |  | 3,115.45 | 1,320.51 |
| 07/20 | 375.53 | 394.19 * |  |  |  | 3,490.98 | 1,714.70 |
| 08/20 | 375.53 | 394.19 * | 3,115.45 | 3,184.95 * | SCHOOL TAX | 751.06 < | 1,076.06- |
| 09/20 | 375.53 | 1,576.76 * E |  | E |  | 1,126.59 | 500.70 E |
| 10/20 | 375.53 | 394.19 * E |  | E |  | 1,502.12 | 894.89 E |
| 11/20 | 375.53 | 394.19 * E |  | E |  | 1,877.65 | 1,289.08 E |
| TOTAL | 4,506.36 | 5,479.54 | 4,506.39 | 4,575.89 |  |  |  |

The last analysis projected the disbursements from your escrow account would be 4,506.39. The required balance should not have exceeded 751.06. The Required Escrow Account Balance is the amount to be on deposit as allowed by Federal law, State law, and/or your mortgage documents; the amount is indicated with an arrow (<).

*****INFORMATION REGARDING PREPAID ESCROWED ITEMS*****

Please be advised, an annual review of your escrow account is conducted to determine the monthly escrow account payments for the next computation year. An Escrow Account computation year is a 12-month period beginning from either the initial payment on a new loan or at the completion of the escrow account computation year on loans previously analyzed. In conducting the escrow account analysis, the amount of the escrowed items may be estimated if unknown, or may be based on the preceding year's charge. In addition, the disbursement date of the escrowed item must be within the computation year and on or before the deadline to avoid a penalty.

This annual review may have identified an escrow item due date that falls outside of the computation period, thus is not included in this year's escrow collection. When this occurs, this can create an escrow shortage on your next annual escrow review. To avoid a potential shortage you may elect to voluntarily pay more into your escrow account. Please contact our Customer Service Center at 800.365.7772 if you have any concerns regarding your Annual Escrow Account Disclosure Statement.

Recording Requested By/Return To:
U.S. BANK FULFILLMENT
SERVICES
999 TECH ROW, #200
MADISON HEIGHTS, MICHIGAN
48071
800-365-7900

This Instrument Prepared By: *Kevin R Bunch*
U.S. BANK NATIONAL
ASSOCIATION
4801 FREDERICA ST
OWENSBORO, KENTUCKY 42301

―――――――――――― [Space Above This Line For Recording Data] ――――――――――――

## LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF NOVEMBER, 2020**, between **DENNIS A SAMSEL** ("Borrower"), and **U.S. BANK NATIONAL ASSOCIATION** ("Lender"), whose address is **4801 FREDERICA ST, OWENSBORO, KENTUCKY 42301** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **MAY 15, 2009** and recorded in **BERKS COUNTY JUNE 3, 2009 INSTRUMENT NO. 2009025224** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**308 SNYDER ROAD, OLEY, PENNSYLVANIA 19547-0000**
(Property Address)

the real property described being set forth as follows:
LEGAL DESCRIPTION:
THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF BERKS, TOWNSHIP OF OLEY AND STATE OF PENNSYLVANIA, DESCRIBED AS FOLLOWS: ALL THAT CERTAIN LOT OR PIECE OF GROUND BEING LOT NO. 9 AS SHOWN ON A REVISED PLAN OF LOTS LAID OUT BY BERNARD J. ESSIG, INC., SAID PLAN RECORDED IN PLAN BOOK VOLUME 112, PAGE 9, BERKS COUNTY RECORDS, SITUATE ON THE NORTHWESTERLY SIDE OF PENNSYLVANIA TOWNSHIP ROUTE NO. 612, KNOWN AS SNYDER ROAD, IN THE TOWNSHIP OF OLEY, BERKS

LOAN MODIFICATION AGREEMENT---Single Family---Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01

(page 1 of 9)

COUNTY, PENNSYLVANIA, MORE FULLY BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT IN PENNSYLVANIA TOWNSHIP ROUTE NO. 612, KNOWN AS SNYDER ROAD, ON THE DIVISION LINE BETWEEN LOT NO. 8 AND LOT NO. 9; THENCE EXTENDING IN AND ALONG SAID PENNSYLVANIA TOWNSHIP ROUTE NO. 612, SOUTH 41 DEGREES 33 MINUTES 30 SECONDS WEST, A DISTANCE OF 105.62 FEET TO AN IRON PIPE; THENCE LEAVING SAID ROAD AND EXTENDING ALONG LAND NOW OR LATE OF OSCAR A. STUMP AND EMMA J. STUMP, HIS WIFE, NORTH 86 DEGREES 9 MINUTES 50 SECONDS WEST, A DISTANCE OF 154.88 FEET TO AN IRON PIN; THENCE EXTENDING ALONG LAND NOW OR LATE OF BETTY A. WEIDNER, SOUTH 88 DEGREES 56 MINUTES WEST, A DISTANCE OF 113.00 FEET TO AN IRON PIN; THENCE EXTENDING ALONG LAND NOW OR LATE OF ROY C. BORTZ AND DOROTHY M. BORTZ, HIS WIFE, SOUTH 87 DEGREES 27 MINUTES 10 SECONDS WEST, A DISTANCE OF 27.70 FEET TO A POINT; THENCE EXTENDING ALONG LOT NO. 8, THE FOLLOWING TWO COURSES AND DISTANCES: (1) NORTH 43 DEGREES 50 MINUTES 40 SECONDS EAST, A DISTANCE OF 298.80 FEET TO A POINT; AND (2) SOUTH 47 DEGREES 48 MINUTES 15 SECONDS EAST, A DISTANCE OF 213.64 FEET TO THE PLACE OF BEGINNING.
PARCEL ID:

Modification Effective Date: **NOVEMBER 01, 2020**
Original Mortgage Amount: **$80,000.00**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **NOVEMBER 01, 2020**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$45,415.98**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.8750%** from **NOVEMBER 01, 2020**. Borrower promises to make monthly payments of principal and interest of U.S. **$215.25**, beginning on the **1ST DAY OF DECEMBER, 2020**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.8750%** will remain in effect until principal and interest are paid in full. If on **NOVEMBER 01, 2060**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179    1/01

(page 2 of 9)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01

(page 3 of 9)

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

(g) Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179    1/01

(page 4 of 9)

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(h) In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(i) The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179   1/01

(page 5 of 9)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01

(page 6 of 9)

In Witness Whereof, the Borrower(s) have executed this agreement.

_Dennis A. Samsel_    Execution Date: 11/12/2020
Borrower - DENNIS A SAMSEL

State of **PENNSYLVANIA**
County of __BErKS__
      **Enter County Here**

On this, the __12th__ day of __November__, __2020__, before me, the undersigned officer, personally appeared **DENNIS A SAMSEL**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_Linda L. Stephan_
Notary Signature

LINDA L. Stephan
Notary Printed Name

Commonwealth of Pennsylvania - Notary Seal
LINDA L. STEPHAN, Notary Public
Berks County
My Commission Expires July 25, 2022
Commission Number ▓▓▓

Title of Officer: Notary Public

My Commission Expires: 7/25/2022

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01

(page 7 of 9)

In Witness Whereof, the Lender has executed this Agreement.

Lender

**U.S. BANK NATIONAL ASSOCIATION**

By: _____

Printed Name: Jennifer M. Green

Title: Mortgage Document Officer

Execution Date: NOV 1 7 2020

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01

(page 8 of 9)

State of KENTUCKY
County of DAVIESS

The foregoing instrument was acknowledged before me this ___17___ day of ___November___, __2020__, by _____ Jennifer M. Green, Mortgage Document Officer of U.S. BANK NATIONAL ASSOCIATION a Delaware National Association, on behalf of the National Association.

(Seal, if any)

OFFICIAL SEAL
JESSICA M. LANGLEY
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 09/10/2022

(Signature of person taking acknowledgment)

Notary
(Title or rank)

(Serial number, if any)

My Commission expires: __9-10-22__

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01

(page 9 of 9)